UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>JUAN CASTRO-NAVARRO,<br><br>                                  Defendant. | Case No.: 14-cr-215-GPC-1<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 266]** |

Defendant Juan Castro-Navarro ("Castro-Navarro") filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 266. The Government opposes. ECF No. 271 ("Opp."). For the reasons that follow, Castro-Navarro's motion is DENIED.

### I.  BACKGROUND

Castro-Navarro was convicted by guilty plea of one count of Conspiracy to Distribute Methamphetamine and Heroine in violation of 21 U.S.C. §§ 841(a)(1) and § 846. ECF No. 166. Castro-Navarro was sentenced to a term of imprisonment of 182 months, followed by 5 years of supervised release. *Id.* Castro-Navarro is serving his sentence at the Federal Correctional Institution Victorville ("FCI Victorville"). Castro-Navarro has served approximately 84 months, slightly less than half of his sentence.

Castro-Navarro is 39 years old and suffers from hypertension and high cholesterol. ECF No. 266; ECF No. 119 ("Presentence Investigation Report" or "PSR") at 3. Castro-Navarro has a body mass index ("BMI") of 32.7, making him obese. ECF No. 277 at 2.

On November 9, 2020, the Court accepted for filing Castro-Navarro's pro se motion and appointed counsel to assist him in seeking compassionate release. ECF Nos. 266, 267. On November 23, 2020, the Government filed a response. Opp. On January 20, 2021, Castro-Navarro, through counsel, filed a reply. ECF No. 277.

## II. DISCUSSION

Castro-Navarro moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Castro-Navarro has satisfied the administrative exhaustion requirement, and second, whether Castro-Navarro has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court

3

for release. Castro-Navarro attached to his pro se motion an Inmate Request to Staff form directed at the Warden of FCI Victorville requesting compassionate release, which is dated October 2, 2020. ECF No. 266 at 7. The Government does not dispute that Castro-Navarro has satisfied the administrative exhaustion requirement by filing his motion after "the lapse of 30 days" from the time he presented his request to the Warden. Opp. at 10 n.9. Accordingly, the Court can consider the merits of Castro-Navarro's motion.

## B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

(1) (A) Extraordinary and compelling reasons warrant the reduction; or

. . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release. While the

1  Court's decision is guided by this policy statement, a number of district courts have
2  found that the amended Section 3582(c)(1)(A)(i) grants courts independent discretion to
3  determine whether a defendant has provided extraordinary and compelling reasons for a
4  reduction of their sentence. *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.),
5  *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United*
6  *States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

7        Castro-Navarro argues that he presents extraordinary and compelling reasons for
8  release because his obesity renders him at increased risk of severe illness were he to
9  contract COVID-19 while in custody. ECF No. 277 at 1–5. The Government argues that
10 his obesity Castro-Navarro's obesity cannot serve as a basis for his release because he is
11 not severely obese, he could lower his weight, and obesity itself is not the type of
12 condition that is so extraordinary and compelling that compassion release is justified.
13 Opp. at 10–14.

14       The Court notes that obesity, which is defined as having a BMI exceeding 30, has
15 been identified by the Centers for Disease Control and Prevention ("CDC") as a
16 condition that increases the risk of severe injury for those who contract COVID-19. *See*
17 *People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and
18 Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-
19 at-higher-risk.html. District courts have split on the question of whether non-severe
20 obesity, on its own or in combination with other potentially risk-increasing health
21 conditions like hypertension, suffices to serve as an extraordinary and compelling reason
22 for release during the COVID-19 pandemic. *See, e.g.*, *United States v. Richardson*, No.
23 2:17-CR-00048-JAM, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("[T]his Court
24 finds that hypertension or obesity alone—regardless of age—place a defendant at higher
25 risk of COVID-19 complications."); *United States v. Jimenez et al.*, No. CR 15-87
26 (SDW), 2020 WL 5887578, at *2 (D.N.J. Oct. 5, 2020) ("Multiple courts in this District
27 have denied compassionate release to inmates suffering from obesity and/or

28

hypertension, despite the risk of COVID-19."); *United States v. Kapeli*, No. CR 16-00172 JMS (01), 2020 WL 5665057, at *4 (D. Haw. Sept. 23, 2020) ("Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release.").

However, the Court need not definitively decide whether Castro-Navarro's obesity alone is an extraordinary reason for release, because the Court would not find that his release would be consistent with the Section 3353(a) sentencing factors. *See* 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2). These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

The Government contends that Castro-Navarro would pose a danger to the community because as the leader of the drug-trafficking distribution cell, he not only caused over 40 kilograms of methamphetamine to be distributed into the community, but he also had a role in the kidnapping, torture, and killing of a rival trafficker. Opp. at 15. The Government also points to Castro-Navarro's disciplinary record while incarcerated. *Id.* Additionally, the Government asserts that the Section 3553(a) sentencing factors do not favor Castro-Navarro's release because a sentence of time-served would not promote deterrence and does not adequately reflect the severity of defense, and because the Court would be unable to subject him to home confinement due to Castro-Navarro's pending Immigration and Customs Enforcement ("ICE") detainer. *Id.* at 19. Castro-Navarro argues that he has no criminal history and engaged in the offenses only after he was kidnapped and extorted, and thus he is not likely to reoffend. ECF No. 277 at 6–7. Castro-Navarro also contends that his infractions while in prison were minor and that he is not the same person he was at the time of his offense, as indicated by BOP's custody reclassification that placed him at a low security level. *Id.* at 6. Further, Castro-Navarro

maintains that the sentencing factors support his release because he has made significant strides towards rehabilitation and because the terms of confinement have already been harsher than what was anticipated at the time of sentencing. *Id.* at 8–10.

The sentencing guidelines indicate that courts should look to 18 U.S.C. § 3142(g) for guidance in determining whether the defendant poses a danger to the safety of any other person or to the community. U.S.S.G. 1B1.13(2). Section 3142(g) sets out a number of factors for a court to consider when evaluating its ability to assure the safety of other people and the community, including "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1). Though not all drug-related offenses present the same risk to the community, Castro-Navarro's involvement with drug distribution was serious. He was arrested with large amounts of methamphetamine and heroin and is believed to have delivered, along with an associate, about 16 to 20 pounds of methamphetamine and two pounds of heroin on a weekly basis. PSR at 5–6. Castro-Navarro admitted to having a management role in the enterprise. *Id.* at 10. Other district courts have denied compassionate release when the defendant had a higher-level role in a drug trafficking scheme, citing concerns about public safety. *Compare United States v. Sandoval*, No. CR14-5104RBL, 2020 WL 3077152, at *6 (W.D. Wa. June 10, 2020) (denying compassionate release because defendant "lead a drug trafficking organization" and "[n]othing about the COVID-19 pandemic reduces the danger of drugs"); *United States v. Sanders*, No. 3:17-CR-31-MOC-DCK-1, 2020 WL 7033963, at *3 (W.D.N.C. Nov. 30, 2020) (finding defendant posed a danger to the community given her large role in running a "stash house" for drug trafficking organization), *with United States v. Cruz*, 467 F. Supp. 3d 958, 962 (D. Or. 2020) (granting compassionate release where defendant "played a minor role in the drug trafficking organization, mainly receiving and delivering packages, and had no significant decision-making authority in the organization"). Thus, although the Court recognizes that Castro-Navarro does not have a significant criminal

history and has shown progress towards rehabilitation while in custody, the Court finds that his high-level involvement in the drug trafficking organization in this case weighs strongly against his release.

Releasing Castro-Navarro at this stage would also not be consistent with the other Section 3553 sentencing factors.  Castro-Navarro has served less than half of his sentence, and because he is a citizen of Mexico who would likely be removed following his release, the Court would be unable to impose other, non-custodial conditions that would ensure his sentence reflects of the severity of the offense and would deter future offenses.  Indeed, many courts, including this Court, have granted motions for a reduction of sentence where the defendant had served a relatively small part of their sentence, *e.g.*, *United States v. Galaz*, No. 15-CR-02559-GPC, --- F. Supp. 3d ---, 2020 WL 4569125, at *6 (S.D. Cal. Aug. 7, 2020); *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *1, 5 (S.D. Tex. May 29, 2020), and the fact that a defendant will be deported upon release is not dispositive in determining whether to grant a motion under Section 3582, *e.g.*, *United States v. Guntipally*, No. 16-CR-00189-LHK, 2020 WL 6891827, at *4 (N.D. Cal. Nov. 23, 2020); *United States v. Olawoye*, No. 1:15-CR-00172-AA-5, 2020 WL 4559816, at *5–6 (D. Or. Aug. 7, 2020).  However, courts must evaluate these factors in light of the facts of the case at hand.  Castro-Navarro has not otherwise shown that his release would be consistent with the sentencing factors or would not present risks to public safety.

Accordingly, even had Castro-Navarro presented extraordinary and compelling reasons for a reduction of his sentence, the Court would find his release unwarranted under the requirements of Section 3582.

\ \ \

\ \ \

\ \ \

\ \ \

8

## III. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge